Slip Op. 19-171
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GUIZHOU TYRE CO., LTD.; GUIZHOU TYRE IMPORT & EXPORT CO., LTD; & XUZHOU XUGONG TYRES CO., LTD., <br><br> Plaintiffs, <br><br> and <br><br> TIANJIN UNITED TIRE & RUBBER INTERNATIONAL CO., LTD., <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Richard W. Goldberg, Senior Judge <br> Consolidated Court No. 17-00101 |

**OPINION**

[Sustaining the Department of Commerce's remand redetermination.]

Dated: December 26, 2019

*Ned H. Marshak* & *Andrew T. Schutz*, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY, and *Richard P. Ferrin* & *Douglas J. Heffner*, Drinker Biddle & Reath, LLP, of Washington, D.C., for plaintiffs.

*John Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief was *Emma T. Hunter*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Goldberg, Senior Judge: This matter returns to the court following a second remand of the final determination of the U.S. Department of Commerce ("Commerce" or "the Department") in its countervailing duty ("CVD") investigation of off-the-road tires from the People's Republic of China ("PRC"). *Certain New Pneumatic Off-the-Road Tires from the People's Republic of*

*China*, 82 Fed. Reg. 18,285 (Dep't Commerce Apr. 18, 2017) (final results), *amended by Certain New Pneumatic Off-the-Road Tires from the People's Republic of China,* 82 Fed. Reg. 40,554 (Dep't Commerce Aug. 25, 2017) (am. final results) ("*Amended Final Results*") and accompanying Issues & Decision Mem. ("I&D Mem."). The two prior opinions of this court thoroughly set forth the facts underlying this remand. *Guizhou Tyre Co. v. United States*, 42 CIT __, 348 F. Supp. 3d 1261 (2018) ("*Guizhou I*"); *Guizhou Tyre Co. et al. v. United States*, 43 CIT __, 399 F. Supp. 3d 1346 (2019) ("*Guizhou II*"). The court presumes familiarity with those opinions. Shortly after this court's second remand opinion, Commerce submitted its Final Results of Redetermination Pursuant to Court Remand, ECF 109-1 (Nov. 19, 2019) ("Second Remand Results"). Plaintiffs Guizhou Tyre Co. and Guizhou Tyre Import and Export Co. (collectively "Guizhou") as well as Xuzhou Xugong Tyres Co. ("Xugong") have agreed with the conclusion drawn in the Department's remand results. For the reasons discussed below, the court sustains Commerce's Remand Results.

## BACKGROUND

In this administrative review, Commerce examined whether Plaintiffs benefited from the Export Buyer's Credit Program ("EBCP" or "the Program"), a loan program instituted by the Government of China ("GOC") that provides loans to foreign companies to promote the export of Chinese goods. *See Guizhou I*, 42 CIT at __, 348 F. Supp. 3d at 1267–69. Previously, in response to each of Commerce's questions regarding the Program's operation, the GOC responded that "none of their relevant customers used the Program." *Id*. In support thereof, Guizhou submitted declarations from its U.S. customers confirming non-use. *Id*. at 1271.

In its Final Determination, Commerce concluded that the GOC both withheld requested information and significantly impeded the proceeding such that the Department has applied a

rate under adverse facts available ("AFA") for each respondent based on Plaintiffs' presumed benefit from the EBCP. I&D Mem. at 24. According to Commerce, there is a "'gap' in the record [which] . . . prevents complete and effective verification of the customer's [*sic*] certifications of non-use," *id*., such that the Department cannot verify the respondent's non-use declarations. Consequently, Commerce applied an adverse inference that Plaintiffs used and benefited from the Program. In *Guizhou I*, the court held that Commerce had misapplied AFA under 19 U.S.C. § 1677e when it failed to make "an initial finding . . . that material information was missing from the record." *Guizhou I*, 348 F. Supp. 3d at 1270.

On the first remand, Commerce explained that during a CVD investigation of chlorinated isocyanurates in 2012, the Department "learned for the first time that the rules for administering the EBCP had been revised in 2013." Final Results of Redetermination Pursuant to Court Remand 10, ECF 93-1 (Mar. 5, 2019) ("First Remand Results"). The revisions to the EBCP include a limiting provision of Export Buyer's credits to business contracts exceeding two million dollars and the use of third-party banks to disburse Export Buyer's credits. According to Commerce, these revisions to the EBCP make verification of any non-use affidavits "unreasonably onerous, if not impossible" because verification would now "require knowing the names of the intermediary banks." First Remand Results at 12−13. Therefore, Commerce "no longer attempts to verify usage" at all, *id.* at 13 n.36.

Plaintiffs and the GOC maintained that the rule change was "internal to the bank" and "non-public," First Remand Results at 10, and moreover, that the change had little relevance to Commerce because Guizhou already demonstrated that its U.S. customers do not use the Program.

The court took issue with several aspects of the First Remand Results. First, the Department failed to explain how the rule change affected the way the Department conducts verification of non-use declarations, or why Commerce could not verify the non-use declarations using different tools at its disposal. *Guizhou II*, 399 F. Supp. 3d at 1351. Second, the Department failed to show the requisite gap needed to make an adverse inference—and how that gap would be filled by the information that it is requesting. *Id.* at 1352. And more so, the court faulted the Department for inconsistently interpreting what constitutes a gap for the purposes of applying an adverse inference to the EBCP.

The Department issued its Second Remand Results shortly following the court's last opinion. Commerce has reconsidered its decision to apply AFA in evaluating use of the EBCP and now determines, "under protest," that the EBCP program was not used by the respondents based on the certifications submitted by Plaintiffs. Second Remand Results at 1.

## **JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court must sustain Commerce's remand redetermination if it is supported by substantial record evidence, is otherwise in accordance with law, and is consistent with the court's remand order. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014); *see also* 19 U.S.C. § 1516a(b)(1)(B)(i).

## **DISCUSSION**

In its second remand results, Commerce "complied, under protest, with the Court's ruling and now finds that neither of the respondents used this program during the [period of review]." Second Remand Results at 8. The Department relied on the non-use certifications submitted by Plaintiffs from its customers to reach its conclusion, as well as record statements by Xugong that

it confirmed with its customers that none used the program. *Id.* Commerce further removed the EBCP program rate from the list of rates included in the calculation of Plaintiffs' subsidy rates. *Id.* at 9.

The court affirms the Department's determination that the record evidence sufficiently demonstrates that neither Guizhou nor its customers used the Program. However, the court does not affirm all of the statements Commerce included in its remand redetermination. Commerce is steadfast in continuing "to find a 'gap' in the record" and "that this gap prevents an accurate and effective verification of Guizhou Tyre's customers' certification of non-use and Xuzhou Xugong's statements that its customers did not use the program." Second Remand Results at 8. However, it seems the Department misinterpreted this court's multiple opinions on the EBCP and the issue the court took with the Department's decision to apply an adverse inference.

The adverse use of facts otherwise available can only be used to fill gaps necessary to complete the factual record. *Guizhou II*, 399 F. Supp. 3d at 1349. The Department has provided a myriad of reasons why verification *might* be onerous without additional information pertaining to the EBCP revisions. But until these reasons are grounded in facts supported by the record—that is, until the Department actually *attempts* verification and adequately confronts these (purportedly) insurmountable challenges, there is little for the Department to hang its hat on when it "continues to find a 'gap' in the record," Second Remand Results at 8. The court is sympathetic to the Department's struggles surrounding this Program, but an adverse inference is not one that can be applied just because Commerce is unsatisfied with the respondent's answers about the EBCP's operations—a program that Plaintiffs do not even use, according to the only evidence available on the record. The court remains convinced that the Department has not

adequately addressed what the gap in the record is (as required under the AFA statute), or, that the missing information is required to effectively verify respondent's non-use of the Program.

Therefore, for the reasons provided in *Guizhou I*, *Guizhou II*, and discussed here, the court views as correct the Department's decision, albeit made under protest, to find that neither of the respondents used the Program during the period of review.

## CONCLUSION

The court rules that Commerce was correct in deciding that the Plaintiffs did not use the EBCP based on the record evidence. For the foregoing reasons, Commerce's Remand Results are **SUSTAINED**. Judgment will enter accordingly.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: December 26, 2019
New York, New York